NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

---

No. 06-1077

---

UNITED STATES OF AMERICA,

Appellee,

v.

NELSON LORA-PENA,

Appellant.

---

On Appeal from the Final Judgment of the United States District Court
for the District of Delaware
(D.C. No. 05-cr-47)
District Judge: Honorable Kent A. Jordan

---

Submitted Under Third Circuit LAR 34.1(a)
February 2, 2007

Before: BARRY, ROTH, *Circuit Judges*, and IRENAS,[*] *Senior District Judge.*

(Filed: April 13, 2007)

---

OPINION

---

IRENAS, *Senior United States District Judge.*

---

[*] Honorable Joseph E. Irenas, Senior United States District Judge for the District of New Jersey, sitting by designation.

Nelson Lora-Pena ("Lora-Pena") appeals his conviction on three counts of assault on a federal officer and one count of resisting arrest, in violation of 18 U.S.C. §§ 111(a)(1)-(b) and 111(a)(1), respectively. He was found guilty by the jury on all four counts and sentenced by the District Court to a prison term of 87 months.[1] For the reasons set forth below, we will affirm the judgment of conviction.

I.

On April 9, 2005, Lora-Pena was arrested in his Newark, Delaware, home by four officers of the United States Marshals Service for violating the terms of his supervised release imposed in the District of Rhode Island.[2] As members of the Fugitive Task Force, the Marshals were executing a warrant for Lora-Pena's arrest. Lora-Pena admitted at trial that he violated the terms of his supervised release when he left Rhode Island approximately ten years earlier, and had been on the run until his arrest in 2005. He also admitted to using a fake name and fake documents to conceal his identity from law enforcement during that time.

The Government presented the testimony of four witnesses: the United States Marshal for the District of Delaware, David Thomas, and Deputy United States Marshals William David, Jack Leo, and Robert Denney ("David," "Leo" and "Denny"). All four

---

[1] Lora-Pena was also sentenced to an additional five-month term of incarceration for violating the terms of a previously imposed supervised release.

[2] The record does not include the underlying conviction and sentence for which the term of supervised release was imposed.

witnesses were present and helped effectuate Lora-Pena's arrest.[3] Two officers stood outside when Lora-Pena came to the door with two large pit bull dogs, who were barking, growling, snarling and lunging. After Lora-Pena pushed the door open and attempted to sic the dogs on the officers, he ran toward the back of the house. Officer David kicked the door shut before the dogs were able to exit.

After frustrating Lora-Pena's effort to flee the house, the Marshals were eventually able to enter the house, where they observed Lora-Pena in the kitchen. He initially indicated a willingness to cooperate but then ran into another part of the house. The officers chased him through the house followed by the dogs. One snarling dog lunged at David, while another attempted to grab Denney's pant leg in its mouth. When the dogs eventually began fighting with each other, the Marshals were able to confine them in a room behind a closed door.

Meanwhile, Leo struggled with Lora-Pena and struck him in the nose with his head while Lora-Pena was attempting to grab Leo's weapon.[4] Then, they knocked into a hallway wall, creating a hole in the wall. They continued struggling as Lora-Pena scratched, clawed, and punched Leo, while Leo struck Lora-Pena with his elbow, fist and forearm. Lora-Pena grabbed Leo's rifle, which caused it to fire a bullet through the front door of the house. The bullet struck the concrete on the ground outside without injuring

---

[3] At least one other law enforcement official (a state trooper) was also present during Lora-Pena's apprehension but the Government did not call him as a witness.

[4] The Assistant United States Attorney said in her closing argument that Leo "headbutted" Lora-Pena.

anyone. At this point Thomas came to Leo's aid and managed to help pull Lora-Pena to the ground. The other Marshals came shortly thereafter. The efforts of all four Marshals and a state trooper were required to subdue Lora-Pena with handcuffs, leg cuffs, and a waist chain.

## II.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We exercise jurisdiction over the judgment of conviction pursuant to 28 U.S.C. § 1291. Because counsel for Lora-Pena concedes that defense counsel made no objection at trial to the asserted misdeeds of which he now complains, we exercise plain error review. *United States v. Olano*, 507 U.S. 725, 732 (1993); *United States v. Wolfe*, 245 F.3d 257, 260-61 (3d Cir. 2001); Fed. R. Crim. P. 52(b).[5] Plain error occurs only when the error is clear and obvious and affects substantial rights. *Wolfe*, 245 F.3d at 261. Substantial rights are affected if the error was sufficiently prejudicial to affect the outcome of the trial. *Id.* A favorable exercise of discretion to correct plain error is warranted if the defendant is actually innocent or the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* (using a quote which traces back through many cases to *United States v. Atkinson*, 297 U.S. 157, 160 (1936)). A defendant has the burden of establishing plain error. *Wolfe*, 245 F.3d at 261.

## III.

---

[5] "A plain error that affects substantial rights may be considered even though it was not brought to the court's attention." Fed. R. Crim. P. 52(b).

Lora-Pena primarily attacks statements made by the Assistant United States Attorney during her rebuttal to defense counsel's closing argument. He also identifies three other alleged errors that he argues cumulatively amount to plain error and require reversal.

A.

Lora-Pena asserts that the Assistant United States Attorney engaged in prosecutorial misconduct when rebutting the defense's closing argument, which suggested that the Government and its witnesses deliberately failed to document certain facts after the arrest and conspired to fabricate their own version of the incident. He argues that this rebuttal impermissibly shifted the burden of proof by suggesting that to obtain an acquittal the jury was required to disbelieve the government witnesses.

When reviewing the prosecution's closing statements for plain error, any claim of prosecutorial misconduct must be viewed "in context" "against the entire record." *United States v. Young,* 470 U.S.1, 16 (1985) (no plain error where defense attorney did not object to prosecutor's rebuttal argument giving his personal opinion as to guilt of defendant). Accordingly, we must first look to the defense's closing to place the prosecution's rebuttal in context.

Counsel for Lora-Pena stated in his closing argument:

> I asked Marshal Leo: "You file a report in this case?" "Yes."
> "And it's your duty to do so when involved in an incident?" "Yes."
> "And you file your report and it stays with the case file and you could use it to refresh your recollection when the time comes for trial?" "Yes."

Well, I intentionally didn't ask the other marshals if that is your duty because they didn't file reports. So you know what their answer is going to be. Their answer is going to be no. It's going to be no. Logic. You didn't strap the juror button on and become stupid. There is no magnetic field to it. They're going to say we don't have to file one. And the marshal who is involved in this very case will certainly back them up. "Oh, I don't require that anymore."

Common sense. Common sense. . . .

Now, why is it that when we have local authorities, state authorities and federal marshals involved in this takedown that we only call the federal marshals? Why is it that we just call the home team and don't rely on any discrepancies coming from the State Police or the local police? Is it my burden of proof, all of a sudden, that the burden of proof just shifts to the defendant?

You have Marshal Leo's word that there was a strike mark outside on that concrete. One of the biggest pieces of physical evidence in this case that you don't have. You mean to tell me, you dummies, that you can bend down, take out a dollar, photograph it on the door, and just overlook, don't bother with, forget to photograph the strike mark of a projectile on concrete? Or was there none? Or was there none? Or was it because the person who shot fired the gun in a laying position?

. . .

I know one thing. I don't hate Marshal Leo. If I'm going into a room to kick some ass, I don't want these pit bulls, I want Marshal Leo with me. . . . You don't get a badge, Marshal Leo, . . . by coming in and giving him this country ass kicking. You don't get a badge for that.[6]

. . .

Now, I cross-examined Marshal Leo. What does the term 'readied' mean? Because he knows, he read his report before he took the stand. Oh, ready could mean two things . . .

He can get away with that with the jury because you're idiots. Look in the mirror during deliberations, if you have to go to the bathroom, and look in there and say 'you idiot,' because that is what

---

[6] At this point in defense counsel's closing, the District Court asked defense counsel to "please" "refrain from the profanity." (J.A. 302)

> you are.
>
> . . .
>
> The defendant doesn't have to testify. You know that. . . . But he took the stand. Did it make sense to you? Did he just come in here, such a genius that he is, you saw him on the stand. Is he a professional witness? Is he a marshal that comes in and testifies day in and day out on cases? Or is this new to him?
>
> . . .
>
> Use your common sense. Is the marshal pleased at the way his deputies acted that day? That is for you to determine. Is he going to come in and sell them out? That is another story. However, were there other eyewitnesses there from other agencies that don't have to answer to that marshal, that aren't part of this group? Yes, there were. You didn't hear from them. It's not my burden of proof. It's the Government's burden of proof.

(J.A. 299-304; 309-10). Thereafter, the Assistant United States Attorney began her rebuttal:

> The United States Marshal for the District of Delaware, David Thomas, is a liar. If you believe that, ladies and gentlemen, then you must acquit. You must acquit Nelson Lora-Pena, the defendant.
> Marshal Thomas is not just a liar, he is also a criminal. He is a criminal because he took and oath to swear to tell the truth subject to the penalty of perjury, and he got up there and told you the defendant resisted arrest. He forcibly resisted arrest. He described to you the defendant's actions.
> But, ladies and gentlemen, if he is not just a liar but also a criminal, and you believe that, then you must acquit the defendant.
> Supervisory Deputy U.S. Marshal, Robert Denney, is a liar. He too is a criminal, a perjurer. If you believe that, ladies and gentlemen, then you must acquit the defendant, because that is your duty.
> Deputy United States Marshal Jack Leo is a liar. He is a liar and a criminal– a criminal who lied to you under oath. If you believe that, it is your duty, your duty to acquit the defendant.
> Deputy United States Marshal William David is a liar and a

>   criminal, like his counterparts, because he too testified under penalty of perjury to tell you the truth.
>
>   . . .
>
>   Ladies and gentlemen, I do agree with [defense counsel] on the following points. And that it is in fact the Government's burden to prove the elements of the crimes beyond a reasonable doubt. And ladies and gentlemen, you took an oath. You took an oath to hold the Government to its burden of proof beyond a reasonable doubt.

(J.A. 310-11; 318).

"[T]he dispositive issue . . . is not whether the prosecutor's remarks amounted to error, but whether they rose to the level of 'plain error' when [she] responded to defense counsel." *Young*, 470 U.S. at 14. To make this determination, we look to: (1) the nature and extent of the remarks in context; (2) whether the remarks were invited by the defense; (3) the district court's instructions and jury charge; and (4) the weight of the evidence of guilt. *Id.* at 11-12, 17-20; *cf. Werts v. Vaughn*, 228 F.3d 178, 199-201 (3d Cir. 2000) (considering same factors to determine whether a habeas corpus petitioner's trial was so prejudiced by the prosecutor's comments so as to deny him a fair trial in violation of the Due Process Clause).

We conclude, in light of the record as a whole, that Lora-Pena has not carried his burden of establishing that the challenged statements prejudiced the jury's guilty verdict. The extent of the prosecution's comments was somewhat limited in that no similar remarks were made during the prosecution's initial closing statement. Both the prosecution and defense repeatedly emphasized the Government's burden of proof beyond a reasonable doubt. Additionally, the prosecution's comments on rebuttal were

invited by the defense's aggressive attacks on the Marshals' credibility.

The District Court's jury charge, given immediately after the Assistant United States Attorney concluded her rebuttal, instructed,

> The lawyers have talked about the law during their arguments. But if what they said is different from what I say, you must follow what I say. . . .
> You have seen the witnesses and have heard them testify. It is your duty to reconcile all the testimony of all the witnesses, both on direct and cross-examination, with all of the facts, if you are able to do so. If, after weighing the matter carefully, and viewing it in the light of your best judgment as reasonable men and women, you find you are unable to reconcile a conflict in the testimony, then it is for you to say who has been mistaken, who has told the truth, who has testified falsely, and whom you will believe. In other words, it is for you to determine whether the Government has proved beyond a reasonable doubt whether the defendant committed the offenses charged in the Indictment, and in making that determination, it is for you to decide which testimony is most worthy of belief, and you may disregard any testimony which cannot be reasonably and fairly reconciled with the testimony you do believe.

(J.A. 320, 324-25).

Lastly, the Government presented ample evidence, through the testimony of the four United States Marshals present during the arrest, that Lora-Pena was guilty of the crimes charged in the Indictment. The jury apparently chose to believe the testimony, and we cannot conclude, because of the other factors just considered, that their verdict was prejudiced by the prosecution's remarks.

Six of the nine cases relied upon by Lora-Pena do not involve plain error review. *See Hodge v. Hurley*, 426 F.3d 368, 380 (6th Cir. 2005); *United States v. Reed,* 724 F.2d 677, 681 (8th Cir. 1984); *United States v. Vargas,* 583 F.2d 380, 387 (7th Cir. 1978);

*Fensterer v. State*, 509 A.2d 1106, 1112 (Del. 1986); *People v. Grice*, 100 A.D.2d 419, 420 (N.Y. App. Div. 1984); *State v. Fleming*, 921 P.2d 1076, 1078 (Wash. Ct. App. 1996). Indeed, *Reed* affirmed the appellant's conviction despite the court's disapproval of the prosecutor's comments. Of the remaining three cases that apply plain error review, none indicate that the improper comments were made during the prosecution's rebuttal (as opposed to closing), and all three reversed the appellant's conviction on the basis of multiple errors committed by the prosecution during the trial. *See Morris v. State*, 795 A.2d 653, 659 (Del. 2002)("We need not decide, however, whether this misstatement standing alone would have constituted plain error because there was other prosecutorial misconduct that constitutes plain error requiring reversal."); *People v. Ferguson*, 526 N.E.2d 525, 534 (Ill. App. Ct. 1988)("[T]hese comments *coupled with* the prosecutors' frequent misstatements of the evidence and other references to the burden of proof throughout the trial certainly had the *cumulative effect* of denying defendant a fair trial.")(emphasis added); *State v. Hassan,* 2005 WL 3148348 at *5 (N.J. Super. Ct. App. Div. Nov. 28, 2005)("This remark, *when considered with the [other] violations as we previously discussed,* compromised defendant's right to a fair trial.")(emphasis added).

### B.

We likewise reject Lora-Pena's other arguments.[7] First, he complains about the Government's cross-examination regarding his use of a false name and false documents.

---

[7] No objection to any of the asserted errors was raised at trial. Accordingly, we apply plain error review. *See supra,* p. 5.

He argues that, "[a]ny fake names or documents Lora-Pena used had nothing to do with the question the jury was being asked to decide: Whether Lora-Pena assaulted a federal officer or resisted arrest. . . . [T]here was no proper evidentiary purpose for the evidence of use of false name and false documents. The evidence was relevant only to show the bad character of Lora-Pena." (App. Br. at 15-16). This argument ignores the rule that questions eliciting facts bearing on a witness's credibility are proper on cross-examination. Fed. R. Evid. 608(b); *United States v. Irizarry*, 341 F.3d 273, 311 (3d Cir. 2003) (holding that cross-examination regarding defendant's possession of another person's identification and blank social security cards was proper; explaining, "inasmuch as Irizarry was a witness, his character for truthfulness was an issue for the jury's consideration.")(quoting Fed. R. Evid. 608(b)).[8]

Second, Lora-Pena complains of the Assistant United States Attorney's use of the term "escape" in her closing argument, when referring to Lora-Pena's continued evasion of law enforcement officials after he violated his supervised release. He asserts the term was distracting and misleading to the jury because it connotes "a convict sawing through the bars of his prison cell and slipping away into the night," whereas all Lora-Pena did was "fail[] to report to a probation officer."[9] (App. Br. at 18). Black's Law Dictionary

---

[8] *See also* 4-608 Weinstein's Federal Evidence § 608.22 ("Specific instances of conduct may be inquired into on cross-examination if they are probative of the witness's truthfulness or untruthfulness.").

[9] It should be noted that Lora-Pena's counsel stated the following in his opening statement: "[The Defendant] is not on trial for the fact that he ran from Rhode Island for

defines "escape": "1. The act or an instance of breaking free from confinement, restraint, or an obligation; 2. An unlawful departure from legal custody without the use of force." (8th ed. 2004).[10] The Oxford English Dictionary defines "escape:" "To gain one's liberty by flight; to get free from detention or control, or from an oppressive or irksome condition." Oxford English Dictionary (2d ed. 1989). Once Lora-Pena violated the conditions of his supervised release, he broke free from the restraints and obligations imposed upon him by his sentence. In other words, he freed himself from the control of the United States Probation Department. Thereafter, he avoided capture for 10 years before the Marshals arrested him pursuant to a federal arrest warrant. The prosecution's use of "escape" was not plain error, particularly in light of the fact that Lora-Pena's own counsel characterized him as being "on the run" during that time.

Third, Lora-Pena asserts that the Assistant United States Attorney mischaracterized his testimony in her closing argument and rebuttal. The Assistant United States Attorney stated in her closing that, "[y]ou heard the defendant say that

---

10 years. . . . He was supposed to report to his probation officer in Rhode Island 10 years ago and didn't. He ran. . . . This is a guy that has been on the run for 10 years." (J.A. 47, 49).

[10] The notation after the definition explains, "'In the technical sense an 'escape' is an unauthorized departure from legal custody; in a loose sense the word is used to indicate either such an unlawful departure or an avoidance of capture. And while the word is regularly used by the layman in the broader sense it usually is limited to the narrower meaning when used in the law, -- although this is not always so.'" Black's Law Dictionary (8th ed. 2004) (quoting Rollin M. Perkins & Ronald N. Boyce, Criminal Law 559 (3d ed. 1982)).

Deputy Leo tackled him . . . then . . . began to beat him, punch him, punch him in the face. . . . then Deputy Leo picked him up and threw him into the wall . . . I think the word the defendant used was 'flung'– flung him into the wall." (J.A. 293-94). On rebuttal, the Assistant United States Attorney said, "did not the defendant, when asked, say that he was tackled by Deputy Leo, he was beaten on the floor, then he was flung, using the defendant's words, into the wall[?]" (J.A. 312).

Lora-Pena states that he testified that he was beaten *after* he was flung into the wall.[11] However, his testimony is not entirely clear as to the order of events. He testified on direct:

> Q: And what happened?
>
> A: [Marshal Leo] tackled me.
>
> Q: Okay. And where did he tackle you?
>
> A: Right in the hallway. In the hallway, next to just like the closet there. When he tackled me, he put me to the wall. He started hitting me for no reason. . . .
>
> Q: All right. Slow down. Did you see the hole in the wall in the pictures?
>
> A: Yes.
>
> Q: How did that happen?

---

[11] The sequence of events is important because the Assistant United States Attorney argued that Lora-Pena's testimony about the beating he received should not be believed because there was no blood on the wall. Lora-Pena attempts to explain that there was no blood because he was beaten after being thrown into the wall.

>A: When he tackled me. When he tackled me, when he put me into the wall, he punched me and kept punching me.

(J.A. 235-36). On cross-examination Lora-Pena testified, however:

>Q: And you testified that while he was punching and kicking you, he then threw you into a wall; is that correct?
>
>A: Yes.
>
>Q: That is Deputy U.S. Marshal Jack Leo; right?
>
>A: Yes.
>
>. . .
>
>Q: So when he initially tackled you, he is punching you, he is causing injury to your face is what you are testifying and telling the jury; correct?
>
>A: Correct.
>
>Q: That occurred before he threw you into the wall; correct?
>
>A: That occurred when he started hitting me.
>
>Q: All right. Both before and after, he threw you into the wall; is that correct?
>
>A: No. When he hit, when he tackled me, that's when he started hitting me. He started hitting me. Then he threw me, fling me like a bubble bath, as big as he is, threw me on the floor and started hitting me.
>
>. . .
>
>Q: Now, you testified, sir, that Deputy U.S. Marshal Jack Leo tackled you, was beating you on the floor, threw you into the wall, you fell down, he was beating you on the floor again. Is that more or less what happened?
>
>A: Correct.

(J.A. 249-50; 253). Thus, the Assistant United States Attorney did not misstate the evidence. Lora-Pena did testify that he was beaten before he was thrown into the wall. The fact that other portions of his testimony might be interpreted differently does not render the prosecution's reliance on the more favorable testimony so prejudicial that it affected substantial rights. *See generally United States v. Werme*, 939 F.2d 108, 117 (3d Cir. 1991) ("The prosecutor is entitled to considerable latitude in summation to argue the evidence and any reasonable inferences that can be drawn from that evidence.").

## IV.

Lora-Pena has failed to carry his burden of establishing that the asserted errors, whether individually or collectively, amounted to plain error. Accordingly, the judgment of conviction will be affirmed.