IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Respondent, | : | Crim. Action No.05-47-JJF |
| | : | Civ. Action No.07-789-JJF |
| vs. | : | |
| NELSON LORA-PENA, | : | |
| Movant/Defendant. | : | |
| | : | |

MOVANT'S MEMORANDUM OF LAW
IN OPPOSITION TO GOVERNMENT'S RESPONSE


NOW COMES the movant (hereinafter "Mr. Lora-Pena"), acting
Pro Se, hereby responds to the Government's opposition response
to the filed Section 2255 motion to Vacate, Set Aside, or Correct
the Sentence for which this District Court of Delaware had imposed
on or about 2005. Mr. Lora-Pena respectfully requests that the
Honorable Court deny the Government's response in its enterity and
grant the relief he seeks therein the Memorandum of Law.



RECEIVED
MAR 1 0 2008
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

BACKGROUND

On April 9, 2005, the United States Marshal Service ("Marshals") went to Mr. Lora-Pena's home to arrest him for a supervised release violation. During the arrest, a scuffle ensued when Mr. Lora-Pena tried to run from the Marshals. The only officer to suffer any injuries was Deputy U.S. Marshal Jack Leo who received a tiny scratch on the index finger of his right hand, another small scratch on the same hand, and a third scratch on his lift hand. No officer suffered any injury from the dogs' present in Mr. Lora-Pena's home. Mr. Lora-Pena was subsequently charged with three counts of <u>assault</u> on a federal officer under 18 U.S.C. § 111(a)(1)(6) and one count of resisting arrest under 18 U.S.C. § 111(a)(1). On September 16, 2005, Mr. Lora-Pena was convicted on all counts after a two-day jury trial. On December 20, 2005, the defendant was sentenced to eighty-seven months incarceration on the first three counts and tewlve months incarceration on the fourth count, all to be served concurrently. Mr. Lora-Pena was further sentenced to five months incarceration for the supervised release violation to be served consecutively. The final judgment of conviction was entered on January 3, 2006.

STATEMENT OF THE CASE

On April 9, 2005, members of the Marshals Service's Fugitive Task Force went to Mr. Lora-Pena's home, a single family one-story house in a residential neighborhood, to arrest him. Mr. Lora-Pena was wanted for violating conditions of his supervised release in the District of Rhode Island by  failing to report to his pro-

-2-

bation officer, failing to make child support payments as ordered, filing to report a change of address, failing to report a new arrest, and possession of a controlled substance. Deputy U.S. Marshal David and Deputy U.S. Marshal Jack Leo approached the front door of the house while Deputy U.S. Marshal Robert Denney and U.S. Marshal for the District of Delaware David Thomas sneaked around to the back. Through the glass, storm door, Mr. Lora-Pena's two pet pit bull dogs also saw the deputies and began barking. Mr. Lora-Pena then turned from the officers and ran from one part of the house to another, encountering law enforcement personel at every exist.

The marshals did not immediately entered the house because of the dogs, and one of the dogs slipped part way out the front door, only to get caught in the door when Deputy David forcefully kicked it shut. After the marshals entered the house, the dogs ran after them barking.[1]  However, the agitated dogs then began to fight each other. Deputy David and Deputy Denney forcibly kicked the dogs into a separate room and locked the door. Later, when the officers went to retrieve the dogs, they were bleeding from wounds the animals had inflicted upon each other.[2]

As Deputies David and Denney kicked Mr. Lora-Pena's dogs,

---

[1]. Prior to entering Mr. Lora-Pena's house, the Marshals knew two pit bulls were there,and it would be mindless to think that Mr. Lora-Pena used the to creat a "substantial risk of serious bodily injury". See U.S.S.G. § 2A1.2(c)(1).

[2]. There was absolutely no testimony at trial that Mr. Lora-Pena commanded the dogs to attack the marshals by running to the back door and up the stairs. The dogs were on their own.

Deputy Leo encountered Mr. Lora-Pena in the hallway. The deputy, who is much bigger than Mr. Lora-Pena, tackled him and slammed into the wall smashing the drywall. Deputy Leo then unrelentingly kicked and punched Mr. Lora-Pena in the face. Mr. Lora-Pena later testified that while he was down on the ground he heard a "gunshot" and the sound of his dogs yelping the way they do when they have been hurt, which made him fear that one of his pets had been shot. The other Marshals finally managed to pull Deputy Leo off Mr. Lora-Pena, who was taken to the hospital for treatment for injuries he received from Deputy Leo. He suffered broken orbital sockets, a broken jaw, swelled eyes, head bleeding in five different places, and damage to both his elbows and his knees.

During the trial, Lora-Pena testified that when he saw the federal Marshals standing outside the glass front door of his home on April 9, 2005, he panicked and ran to the back door, but stopped and ran back inside because there were Marshals outside the back door as well. He went through the hallway and was then tackled and "put into the wall" by Deputy Leo who began hitting him, beating him up, so he covered himself because that was the only thing he could do. He stated:

> [Deputy Leo] started punching me, kicking me, telling me, 'I finally got you after ten years.' And I was praying to God to please stop him hitting me, and he kept hitting me for no reason. And one of the Marshals there, he didn't even try to stop him from hitting me. I'm by myself. I have no mercy. I'm helpless. And he just kept hitting me.

Mr. Lora-Pena explained that the second Marshal who had accompanied Deputy Leo into the house from the front door just stood there, but that after about five minutes, two Marshals that he had seen at the back door of the house came inside and helped

-4-

me by pulling Deputy Leo off of me. Mr. Lora-Pena's testimony was clear that Deputy Leo first tackled me into the wall and there began hitting me. Deputy Leo, however, testified that he strucked Mr. Lora-Pena prior to tackling me into the wall.

On December 20, 2005, the district court sentenced Mr. Lora-Pena to seven years and three months on the assualt charges and an additional five months for the supervised release violation. Mr. Lora-Pena argues in the motion that his 87-months sentence should be vacated, set aside, or corrected because this Court made two errors when it adopted the Pre-Sentence Report ("PSR") attributing five-level enhancement pursuant to § 2A2.(b)(2)(A) and six-level § 2A2.2(b)(6) to the Base Offense Level, (14). Mr. Lora-Pena also argues that the Government violated the discovery rule in <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), which it knwingly relied; and denied the right to impeached its witness at trial and sentencing on its perjudicial testimony. Finally, Mr. Lora-Pena asserts that his counsels, trial and appellate, rendered ineffective assistance by failing to object and/or preserve and appeal. For those reasons and more, all of Mr. Lora-Pena's claims have merit and his motion should be granted.

A. <u>MR. Lora pena's PSR's Utilization.</u>

First, the PSR Reporter used Section 3D1.1 of the Guidelines to group all offenses which essentially involved the same harm into one group for purposes of guideline computation. <u>See</u> U.S.S.G. § 3D1.2(a) and (c); <u>also</u> <u>see</u> PSR at ¶13. [3] The most "serious" counts of conviction were grouped together—Counts One through

-5-

Three—by the PSR. (<u>See</u> PSR ¶14). Counts One through Three were convictions assault of a federal officer and Count Four conviction was for resisting arrest.

### Base Offense Level

Based on the United States Commission Guidelines for violation of 18 U.S.C. § 111(a)(1) and (b), which Mr. Lora-Pena was convicted, U.S.S.G. § 2A2.2 was applied and a base offense level of 14 was attributed. (<u>See</u> PSR ¶15).

However, a Specific Offense Characteristric: Section 2A2.2(b)(2)(A) was applied to the offense level because five levels--based on the testimony presented at trial. (<u>See</u> PSR ¶16). Another "Specific Offense Characteristic: Section 2A2.2(b)(6), which called for a two-level enhancement if the a defendant was convicted under 18 USC § 111(b), was added. (<u>See</u> PSR ¶17). The last enhancement attributed by the PSR, and adopted by this Court, was a Victim—Related Adjustment pursuant to U.S.S.G. § 3A1.2(c)(1), six levels were added to the Base Offense Level. (<u>See</u> PSR ¶18).

Base on those enhancements, the Court sentenced Mr. Lora-Pena, erroneously, and counsels' failure to object and preserve and/or appeal the issues, provided ineffective assistance and the Court's errors violated Mr. Lora-Pena's rights.

---

<u>3</u>. A copy of the specific issues from the PSR is attached to this Memorandum of Law.

ARGUMENT

1.    STANDARD OF REVIEW

Because the claims Mr. Lora-Pena raises where not raised on direct appeal, he is not athomatically entitled to collaterally attack them unless he shows case and prejudice. See United States v. Massaro, 538 U.S. 500,504 (2000); see also Murray v. Carrier, 477 U.S. 478,106 S.Ct. 2639,2646, 91 L.Ed.2d (1986)("Defualting a claim is properly asserted on ineffective assistance of counsel, which provides cause."). However, failure to raise such claims could be excused as cause when raised in the context of Sixth Amendment ineffective assistance counsel. Id. Thus, Mr. Lora-Pena two erroneous enhancement claims are properly brougth pursuant to ineffective assistance. However, his Brady violation, he must show cause and prejudice.

This Court should grant Mr. Lora-Pena's motion in its enterity or, in the alternative, a hearing based upon the legal and factual claims raised therein the his Memorandum of Law.

A. Mr.Lora-Pena's Claims of Ineffective Assistance Counsel.

For Mr. Lora-Pena to prevail on his ineffective assistance claims, he must meet the two-part test outlined in Strickland v. Washington, 466 U.S. 688 (1985). Mr. Lora-Pena must first show that counsel's representation fell below an objective standard of reasonableness. Strickland, 466 U.S. at 687-88. Mr. Lora-Pena must also 'show that his counsel's deficient performance prejudiced him. Id. at 687. That "there is a reasonable probability

-7-

that, but for counsel's unprofessional errors, the result of the
proceeding would have been different." Id. at 694. The Third
Circuit has held that a counsel who        to render effective
assistance should be "Familiarized with the 'structure and basic
content of the Guidelines'." See United States v. Day, 969 F.2d
39,43 (3rd Cir. 1992).

Because Mr. Lora-Pena's ineffective assistance counsel claims
are based on errors in calculating the advisory Guidelines sentence
range, it could be granted. Had Mr. Lora-Pena's counsels' raised
the issues on dircet appeal, the Third Circuit Court would have
reviewed the lower court's findings of facts and law for clear
error. United States v. Plotts, 359 F.3d 247 (3rd Cir. 2004)("Un-
der plain error review...may [be] grant[e]d relief if (1) the
District Court committed an 'error,' (2) it was 'plain,' and (3)
it affected 'substantial rights' of the defendant.")(quoting
United States v. Olano, 507 U.S. 725, 732, 123 L.Ed.2d 508, 113
S.Ct. 1770 (1993); see also United States v. Russell, 134 F.3d
171, 180 (3rd Cir. 1998)("A deviation from a legal rule is [an]
error.")(citation omitted); United States v. Bethancourt, 65 F.3d
1074,1080 (3rd Cir. 1995)("Applying plain error review to district
corut's Guidelines interpretation."). To show actual prejudice,
Mr. Lora-Pena that his counsels' errors--that there is a "reason-
able probability" that the Third Circuit Court would have reversed
the district Court's erroneous application of §§ 2A2.2(b)(2)(A)
and 2A2.2(c)(1) enhancements. See (Exhibit A, ¶¶15,17, and 18).

B. Mr. Lora-Pena's Brady Violation And Knowingly Used
of Prejudicial Testimony at Trial.

Mr. Lora-Pena concedes that his Brady claims was not raised
on direct appeal and is raised on the gist of Sixth Amendment
ineffectiveness assistance of counsels, he msut show cause and
prejudice. Strickler v. Greene, 527 U.S. 263,282 (1999). For
procedural defaulting Brady claims on direct appeal, Mr. Lora-
Pena must show that there is "a reasonable probability that the
result of the trial would have been different",but for the alleged
errors. Id. at 287.

Thus, Mr. Lora-Pena meet the requirements necessarily for
relief—that the result would have been different. As shown below,
Mr. Lora-Pena can meet that standards on his claims.

II.    THE DISTRICT COURT DID ERRED IN CALCULATING MR.LORA-PENA'S
       GUIDELINES SENTENCEE RANGE.

A. The Discharge of A Firearm Enhancement In USSG
§ 2A2.2(b)(2)(A) Should Not Have Been Applied.

The total offense level was increased pursuant to Count I
by five levels by virtue of the evidence presented at trial due
to what the PSR determined on dischargement of the Marshals
firearm. See (Exhibit,("Ex.") 16)). Thus, though counsel objected
to the enhancement at sentence, the Court nevertheless overruled
this objsection and concluded that the "weapon was discharged as
a result of and as a direct consequence of the struggle which was
going on between the Marshal and the defendant". See (Gov't Exh.
3 at 16). The district Court's findings were factually and lawly
inaccurate, and counsel should have appealed the illegal five
levels enhancement.                -9-

At trial , Leo testified that Mr. Lora-Pena "charged into me and grabbing for his weapon." See (Gov't Exh. 1 at A-220-A 221). Leo testified that Mr. Lora-Pena was "trying to get the rifle, he caused it to discharge or fire around through the door." (Gov't Id. at A-225). He stated on cross-examination as follows:

> As he [Mr. Lora-Pena] was pulling at it [gun] and pulling at my hands, his finger slipped into the trigger. Well, I assume. I don't know for sure. I don't know how he discharged the weapon. All I know is that I'm trained to maintain a straight trigger finger and I've done so hundreds of times before, but the weapon did go off and it could only have went off from somebody depressing that trigger in there.

(Gov't Exh. 2 at B-16-B-17).

From the factual stand-point, the district Court could not reasonably concluded that Mr. Lora-Pena caused the Leo's firearm to discharged. Leo's evidentiary evidence, which the Court adopted from the PSR, is clearly refuted by Delaware's State Trooper's Initial Crime Report. [4] In this Report mentioned the fact, "A U.S. Marshal—and not a "fugitive", Mr. Lora-Pena—discharged the firearm. (Exh. "C"). Leo himself admitted as much when he testified that he "Well, I assume. I don't know for sure. I don't know he [Mr. Lora-Pena] discharged," his own weapon, but he remembered distinctively that his concern was to "protect" the weapon. (Gov't Id. at A-220; Exh. at B-16-B17); Duraco Prods., Inc. v. Joy Plastic Eters., 40 F.3d 1431,1438 (3rd Cir. 1994)(quoting Loretangeli v. Critelli, 853 F.2d 186,193 (3rd Cir. 1988)("[t]he decision whether

---

4  I was contacted by Sgt._____, reference assistance being requested of the U.S. Marshals Service. Sgt._____ further advised me that U.S. Marshal's took a fugitive of nine years into custody however, during a lengthy struggle with fugitive, a firearm was accidentally discharged by a U.S. Marshal. (See Ex. "C").

-10-

to enter a preliminary injunction is committed to the sound discret-
ion of the trial court...will be reversed 'only if the court abused
its discretion, committed an obvious error in applying the law,
or made a...mistake in considering the proof.").

The above testimony and exhibits show that the district Court
did not have a credible factual evidentiary on the basis to conclude
that Mr. Lora-Pena discharged Leo's weapon as a "direct consequence
of the struggle." Mr. Lora-Pena's counsel had a factaul basis to
appeal the district Court's erroneous findings. See Sistrunk v.
Vaughn, 96 F.3d 666,670 (3rd Cir. 1996)(quoting Strickland, 466 US
at 689, 104 S.Ct. at 2065)("We must 'judge the reasonableness of
counsel's challenged conduct on the facts of the particular case,
reviewed as of the time of counsel's conduct."), id. at 690, 104
S.Ct. at 2066. Thus, the Government claims that even had Mr. Lora-
Pena claimed on appeal taht the district Court's application of the
discharge-of-a-firearm enhancement was legal error (as opposed to
a factual error), Mr. Lora-Pena would have still been denied relief
from the appellate court. (Gov't Br. at pp.13-14). Mr. Lora-Pena
disagrees with that assessment.

First, USSG § 1B1.3(a)(1)(A), the Government claims in its
response brief, would subject Mr. Lora-Pena to enhancements based
on "all act...willfully caused by the defendant." (Gov't Br. at
p.14). Accordingly, the Government states that courts have "consis-
tently" and "appropriately" subjected defendant to discharge-of-a-
firearm enhancements...when the defendant willfully induces a
struggle...leads to the discharge of a firearm, even if the defen-
ant did not intend to cause the firearm's dischargement. See

-11-

United States v. Henderson, No. 02-436 2002 WL 31255447, at *1-2
(4th Cir., Oct. 9, 2002). That reasoning is incorrect, and Hender-
son, however, is non-precedential without the Third Circuit's
approval.

This district Court relied on the simple language in § 2A2.2
(b)(2): "If a firearm was discharged, increase by 5 levels;" that
a firearm was discharged as a proximate result of Mr. Lora-Pena's
conduct, so Mr. Lora-Pena got the 5 levels increase to his base
offense.

Mr. Lora-Pena contends that § 2A2.2(b)(2)(A), even though
read in  the passive voice,[5] applies only where a defendant himself
(or an accomplice or co-conspirator) discharged a firearm. Similarly,
other subsections od § 2A2.2(b)(2), which provide an upward adjust-
ments for dangerous weapon (B) a dangerous weapon (including a
firearm) was otherwise used; (C) a dangerous weapon (including a
firearm) was brandished or it was threatened, also must read consist-
ent with that similar language. Mr. Lora-Pena argues that it would
be senseless, dispite the Government's U.S.S.G. § 1B1.3(a)(1)(A)
contention, to give assualtive defendant an upward adjustment each
time someone fired a firearm § 2A2.2(b)(2)(A). See United States v.
Gordon, 64 F.3d 281, 1995 U.S. App. LEXIS 24 109 (7th Cir. 1995)
("The court vacated...sentence for bank robbery and remanded for
resentencing because the fact  ˙  a guard shot defendant...did not
warrant an upward adjustment for discharging a gun during commission
of the offense."). [6]

---

[5] Section 2A2.2(b)(2): If (A) a firearm was discharged, increase by 5 levels.

-12-

In _Gordon_, the defendant confronted an armed bank security guard with a metal pipe disguised as a firearm. The guard grabbed defendant from behind, placed the gun against his back and said "don't struggle or you will be shot." Defendant did not comply and instead tried to elbow the guard and wrestle with him—and the guard shot him. (64 F.3d 282). At sentencing, the district court made, as in Mr. Lora-Pena's conduct, an analysis when increasing _Gordon_'s base offense level that: (1) a firearm was discharged, (2) a firearm was discharged as a...result of _Gordon_'s conduct. (64 F.3d 283). The appellate court reversed the sentence reasoning that: (1) a defendant cannot be said to have induced or willfully caused a guard to discharge a firearm simply because he committed the underlying offense; (2) a defendant cannot be said to have induced or willfully caused a guard to discharge a firearm simply if it was 'reasonably foreseeable' that the defendant's _actions_ would lead to the discharge.[7]

Moreover, Mr. Lora-Pena struggle with Leo, for which the firearm was discharged on the account of "A Marshal" (See Exh. "C"),

---

6  The Robbery U.S.S.G. Manual [§ B3.1(b)(2)(A)], is identical to [§ 2A2.2(b)(2)],reads: "If a firearm was discharged, increase by 7 levels. However, just like § 2B3.1(b)(2)(A), Section 2A2.2(b)(2) only describes: "If a firearm was discharged." It does not describes by what or who should an enhancement be warranted for discharging a firearm. See §§ 2A2.2(b)(2) and 2A2.3(b)(2).

7 The Seventh Circuit Court stated that, "In the Sentencing Guidelines, reasonable foreseeable applies to the actions of co-conspirators, not of bystanders or other non-participants in the crime." See U.S.S.G. § 1B1.3(a)(1)(B). For this reason, the Court committed factual and legal error, and the Government's substantive claim pursuant to U.S.S.G. § 1B1.3(a)(1)(A) is meritless. (See Gov't Br. at pp.13-13).

-13-

is similar and identical in nature to Gordon's (64 F.3d 282) and cannot be enhanced on that legal and factual basis. Nor could this Court lawfully, under the Guideline [Section 3A1.2(c)(1)] increased Mr. Lora-Pena's Base Offense Level by six (6). That is impermissibly be "double-counting".

B.    THE DISTRICT COURT IMPERMISSIBLY DOUBLE-COUNTED MR.LORA-
      PENA'S BASE OFFENSE LEVEL WHEN IT INCREASED IT BY SIX
      LEVELS FOR VICTIM RELATED ADJUSTMENT PURSUANT TO USSG §
      3A1.2(c)(1)

Based on the PSR findings, the Court applied a 6 level Victim-Related Adjustment enhancement to Mr. Lora-Pena's Base Offense. (See PSR ¶18, p.5). However, no objection was sustained based on this erroneous enhancement application. Thus, Mr. Lora-Pena reasoned that he should be re-sentenced by this Court.

I. Guideline For Violating 18 USC § 111(a)(1) and (b)

The base offense level for violating 18 U.S.C. § 111(a)(1) and (b) is found in U.S.S.G. § 2A2.2 and calls for a base offense level of 14. (See PSR ¶15 at p.5).

Because Mr. Lora-Pena was convicted pursuant to 18 U.S.C. § 111(a)(1) and (b), an enhancement applied pursuant to Section 2A2.2(b)(2)(A). Pursuant to Section 2A2.2(b)(6) two-levels enhancement applied because Mr. Lora-Pena was convicted under 18 U.S.C. § 111(b). (See PSR ¶17 at p.5); see also U.S.S.G. § 1B1.1, Application Note 4 (6) Commentary. Lastly, a Victim-Related Adjustment was added increasing the Base Offense Level by six levels. See § 3A1.2(c)(1). This last adjustment is impermissibly double-counting.

-14-

18 U.S.C. § 111(b). Section 111(b) inturn states:

> Whoever, in the commission of any acts described in subsection
> (a), uses a deadly or dangerous weapon (including a weapon in-
> tended to cause death or danger but that fails to do so by
> reason of a defective component) or inflicts bodily injury, shall
> be fined under this title or imprisoned not more than 20 years,
> or both.

See 18 U.S.C. § 111(b). However, Section 2A1.2(c)(1)--Offense

Victim Adjustment, which Mr. Lora-Pena Base Offense Level was in-

creased by six levels, states as follow:

> If, in a manner creating a substantial risk of serious bodily
> injury, the defendant or a person for whose conduct the defen-
> dant is otherwise accountable--
>
> (1) knowing or having reasonable cause to believe that a
> person was a law enforcement officer, assaulted such
> officer during the course of the offense.

See § 3A1.2(c)(1); see also (PSR ¶17,at p.5). The Commentary to

§ 3A1.2(c)(1), Application Note (2) states:

> Nonapplicability in Case of Incorporation of Factor in Chapter
> Two. Do not apply this adjustment if the offense guideline
> specifically incorporates this factor. The only offense guide-
> line in Chapter Two that specifically incorporates this factor
> is § 2A2.4 (Obstruction ro Impeding Officer).

See § 3A1.2(c)(1), Application Note (2). This enhancement too

could not have been applied to Mr. Lora-Pena's Base Offense

Level because it was already accounted for in the "Offense

Guideline—Chapter Two § 2A2.4.

III. Mr. Lora-Pena contends sicne § 3A1.2's Application

Note 2 warns not to apply this adjustment if the "Offense Guide-

line" § 2A2.2(b)(1) incorporates this factor [§ 3A1.2(c)(1)];

assaulting such officer during the course of the offense, then

-15-

it was legally immpossible to applied this enhancemnt. Section
3A1.2 Application Note 2 further gives an example where it directs
where the "Offense Guideline" is found: "The only offense guideline
in Chapter Two that specifically incorporates this factor is §
2A2.4." Thus, Mr. Lora-Pena contends is "double-counting" to apply
and/or incorporate Section 3A1.2(c)(1) [assault on such officer
during the course of the offense] with Section 2A2.2. See § 3A1.2
(c)(1) Application Not 2; see also (PSR ¶¶¶15,16, and 17); United
States v. Calozza, 125 F.3d 687 (9th Cir. 1997)("Identical enhance-
ment for separately grouped counts was double-counting."); see
also United States v. Day, 969 F.2d 39,43 (3rd Cir. 1992)("Familarity
with basic content   the Guideline (including the definition...)
has become a necessity for counsel who seek to give effective repre-
sentation.")(quoting Strickland, id 104 S.Ct. at 694).

     For all of the above reasons, Mr. Lora-Pena's counsel should
have appealed this issue, and provided ineffective assistance by
failing to do so.

          . C. THE COURT ERRED WHEN IT APPLIED USSG 2A2.2, WHICH
                COVERS AGGRAVATED ASSAULTS INSTEAD OF USSG § 2A2.3
                WHICH COVERS MINOR ASSAULTS

     Mr. Lora-Pena also contends that both his trial and appellate
counsels provided ineffective assistance when they failed to con-
test the district Court's erroneous application of Aggravated
Assualt [§ 2A2.2] instead of applying the Minor Assualts [§ 2A2.3]
at sentencing. The Court adaptation of the PSR's Aggravated Assualt
Guideline pursuant to Mr. Lora-Pena's conviction on Count I,II,and
III (does not meet the legal terms described in USSG § 2A2.2).
Mr. Lora-Pena therefore asserts that the evidence at trial shows

-16-

that the Marshal sustained no serious injury and it minor--if any that he suffered. See (Gov't Exh.4 p.13,20, 26). The Government's version pertaining to the overall event is misplaced.

I. The first step in applying the guidelines is to determine the applicable offense guideline section" found in "Statutory Index (Appendix A)," which is designed to "assist" in determining the guideline provision applicable to particular criminal conduct. See U.S.S.G. § B1.1(a); see also United States v. Winters, (2000 FED App. 7) 1995 U.S. App. LEXIS 20712, No. 94-4269, 1995 WL (210 F.3d 664) (6th Cir. 1995)(unpublished per curiam). The Index provides the guideline section "ordinarily applicable" to the conviction statute; however:

> If, in an atypical case, the guideline section indicated for the statute of conviction is inappropriate because of the particular conduct involved, use the guideline section most applicable to the nature of the offense conduct charged in the count for which the defendant was convicted.

U.S.S.G., app. A. The guidelines indicate that §§ 2A2.2 and 2A2.4 are the provision "ordinarily applicable" to the convictions under 18 U.S.C. §111. See (PSR ¶15, p.5). Even though the presentence investigation Reporter concluded that § 2A2.2, covering aggravated assualts, as a result of the incident, Mr. Lora-Pena inflicted minor lacerations to the Marshal's hand. See PSR ¶7 at p.4-5). The district Court nevertheless ignored this fact of the "offense conduct" and applied § 2A2.2 (the assualt of Leo,Denney, and David),[8] agreeing with the PSR's findings that an "Aggravated Assualt" under § 2A2.2 is defined as follows:

8 [A] felonious assault that involved (a) a dangerous weapon with intent to do bodily harm (i.e., not merely to frighten), or (b0 seriousl bodily injury, or (c) an intent to commit another felony.

> (A) a dangerous weapon with intent to do bodily harm (i.e.,
> not merely to frigten), or (B) serious bodily injury, or,
> (C) an intent to commit another felony.

U.S.S.G. § 2A2.2 Comment. (n.1). Correspondingly, the § 2A2.3
guideline for "Minor Assault" is explicitly defined as "a feloniou
assualt not covered by § 2A2.2". See U.S.S.G. § 2A2.3 Comment.
(n.1).

Given the absolute paucity of evidence that Mr. Lora-Pena had
intent no to do bodily harm, or commit another felony, the district
court erred in applying the "aggravated assault" guideline. Mr.Lora-
Pena made no verbal threats or statements that he intended to do
the Marshals any harm, in fact he panicked and ran when he saw the
Marshals at his door. He had no time or concerns to set the dogs on
the Marshals. See (Gov't Br. at p.2). Mr. Lora-Pena's "offense
conduct" does not reflect that he intended to "used" the dogs as a
"dangerous weapon". See United States v. Luscier, 983 F.3d 1512
(9th Cir. 1993)("Argument ignores the fact that (983 F.2d 1512)
Luscier's conduct does not satisfy the definition of aggravated
assault.").

In Luscier, the district court categorized his assualts as
aggravated and calculated his offense levels in accordance with
Section 2A2.2 of the guidelines after he pleaded guilty to two
counts of assault with a dangerous weapon. The government there
maintained that because Luscier committed the assaults with a
_____
8. Yet the only injury, if any, was not sustained from Mr. Lora-Pena's dogs,
but minor lacerations from the struggle to apprehend him. See (Gov't Br. p.15).

dangerous weapon is not, in itself, justification for classfying them as aggravated.") See Luscier, 983 F.2d 1512; see also United States v. Hood, 210 F.3d 660 (6th Cir. 2000).

In the instant case, though the Government maintains that Mr. Lora-Pen's dogs were used as a "dangerous weapon", its argument also ignores the fact that (983 F.2d 1512) his conduct does not satisfy the definition of aggravated assault. See (Gov't Br. at pp. 1-2); see also Counts I, II, III, and IV of Indictment). Mr. Lora-Pena was not found to have committed the assault with intent to do bodily harm or another felony and it did not result in any kind of serious bodily injury.[9] The district Court should have applied the base offense level for a Minor Assault as provided in Section 2A2.3(a)(1). Counsels should have appealed the erroneous findings by the Government and the district Court.

### D. THE GOVERNMENT DID VIOLATED BRADY DISCOVERY RULE WHICH THEY KNOWINGLY USED PERJURY TESTIMONY TO CONVICT AND/OR SENTENCE/PUNISHED MR. LORA-PENA

Mr. Lora-Pena alleges in his Section 2255 motion that the Government violated his Brady discovery right and knowingly relied upon perjurious testimony to convict and sentence him. However, Mr. Lora-Pena did not raise those claims on direct appeal, and must thus show actual perjudice for failing to do so. The Strick-

---

[9] Background to App. N. states that: An assault that involves the presence of a dangerous weapon is aggravated when the presence of the dangerous weapon is coupled with intent to cause bodily injury.

---

[9] Section 2A2.2 Application Note (n.1) defines a dangerous weapon (see § 1B1.1) ...not ordinarily used as a weapon (e.g., a car, a chair, or an ice pick) if such an instrument is involved in the offense with the intent to commit bodily injury. There was no such "intent" associated Mr. Lora-Pena's conduct. He did not set the dogs on the Marshals. He ran upon seeing the Marshals. He did not-in no way-showed any "intent" to caused the dogs to attack the Marshals. The enhancement was wrong.

land "reasonable probability" test is the standard courts used to determine whether the result of trial or sentence would have been different.

    I. <u>Failure to Raise Claims of Brady and Perjured Testimony</u>

Mr. Lora-Pen states that traditional default does not apply in the instant Sixth Amendment assistance of counsel claim where such claims depend on matters outside the scope of the record as in the intant case before this Court. <u>See</u> <u>e.g.</u>, <u>Billy-Eko v. United States</u>, 8 F.3d 111,114 (2nd Cir. 1993); <u>Engle v. Issac</u>, 456 U.S. 107,135, 120 S.Ct. 1558, 1575-76, 71 L.Ed.2d 783 (1972) The Supreme Court stated that since the concepts of "cause and prejudice" are not rigid, but "take their meaning from...principles comity and finality...[i]n appropriate cases those principles must yield to the imperotive of correcting a fundamentally unjust incarceration." <u>Id</u>.

Here, Mr. Lora-Pena's sentence was enhanced due to Leo and others' testimony that he cause the firearm to discharge. <u>See</u> (PSR ¶16, p.5). Mr. Lora-Pena had to rebutt their claim that he did not discharge the firearm by a preponderance of the evidence. <u>See</u> <u>Maher Terminals v. Director, Office of Workers' Compensation Programs</u>, 992 F.2d 1277 (3rd Cir. 1993)("Where a party having the burden of proceeding has come forward with a <u>prima facie</u> and <u>substantial case</u>, he will prevail unless his evidence is discredited or rebutted. ...Where there is evidence pro and con, the agency must weigh it and decide in accordance with the preponderance.").

-20-

However, Mr. Lora-Pena could not have rebutted the Government's claim that he discharged Leo's firearm pursuant to § 2A2.2(b)(2)(A) because the Government did not submit all of the Reports filed pertaining to the instance matter. As a result of their failure to submit critical report showing that Leo himself "accidentally" discharged his own firearm, Mr. Lora-Pena's sentence was increased five levels. See (Exh. "C", p.2); see also (PSR ¶16, p. 5).

The excluded Report, which stated that "a Marshal accidentaly" discharged a firearm, was reported by a Delaware State Trooper who was assisting the U.S. Marshals. See (Exh. "C", p.1). This Report clearly vindicates Mr. LorA-Pena by a reponderance of the evidence that he did not discharge Loe's firearm. Furthermore, Loe himself could not gave an account as to how his own firearm was "discharged". See (Gov't Br. at p.13).[10]

The Government excluded this Report but here states counsel did referred to Loe's Report and Mr. Lora-Pena could not have been prejuidiced at trial or sentence, is troubling. The Government wants the Court to believe that to impose an enhancement of five levels minus the Report that proved by a preponderance that a Marshal accidentally discharged his own gun is no prejudice at all, but it was okay for the Government to release favorable Reports showing and describing specifically how Mr. Lora-Pena might have caused dischargement of Loe's firearm. See Brady v. Maryland, 373 U.S. 83, 10 L.Ed.2d 215, 83 S.Ct. 1194 (1963), id. at 87("Suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either

-21-

sentencing (Gov't Br. at p.17), but it fails to recognized that
the Report was favorable and material for sentencing [a punish-
ment for which Mr. Lora-Pena had a burden of proof by preponder-
ance of the evidence standard] to show that one law enforcement
officer supports his claim that he did not discharge Leo's fire-
arm. See Maher Terminals v. Director, Officer Workers' Conpensation
Programss, 992 F.2d 1277 (3rd Cir. 1993)("Where a party having
the burden of proceeding has come forward with a prima facie and
substantial case, he will prevail unless his evidence is distredited
or rebutted."); see also Brady id., at 87 ("Suppression...of evid-
ence favorable to an accused upon request violates due process
where the evidence is material either to guilt or to punishment.").

   Moreover, the Government claims that that Report would have
had "affected" the district Court's decision to apply the enhance-
mentfor discharging Leo's firearm based on the statement in that
Report that "a U.S. Marshal accidentally discharged a firearm."
See (Gov't Br. at p.18); see also (Exh. "C" at p.1). This purported
statement does not, as the Governemnt claims, "substantially corrob-
orates" Leo's testimony. Leo may have testified that the firearm
discharged during a struggle with Mr. Lora-Pena, but that Report
clearly distincted between who "accidently" discharged firearm.[11]

----

11  For such the Report distinctively states that, "A firearm was accidentally
discharged by a U.S. Marshal." See (Exh. "C", pp.1-2). It cetainly did not state
that: "A firearm was accidentally discharged by the subject. Nor did it state
that: The U.S. Marshal's firearm was accidentally discharged by Mr. Lora-Pena."
There is distinctions which had to be determined by a preponderance standards,
and the Report was needed and should have been turnover to the defense just as
the other ones favorable to the Governemeht.

to guilt or to punishment."), see also Rule 16(a)(1)(F).

Rule 16(F) Discovery and Inspection was violated, and its violation prohibited the defense from impeaching the Government's witnesses at trial and/or senencing, which the five levels enhancement was material to rebutt the Government's firearm claim that Mr. Lora-Pena caused it to be "discharge". Brady id. at 87 ("Suppression by the prosecution of evidence favorable to an accused upon request violated due process where the evidence is material to...punishement.").

The Government's witness at trial and sentencing was asked whether his Report was accurate that Mr. Lora-Pena had dischaged the firearm; but the State Trooper's Report was clear and accurate that "A Marshal accidentally dischaged his gun. See (Exh. "C", p.1); also see Rule 16(F), which states that:

> Upon a defendant's request, the govenrment msut permit a defendant to inspect and to copy or photograph the results or report of any physical or mental examination and of any scientific test or exper-imnt if:
>> (i) the item is within the government's possession, custody, or control;
>> (ii) the attorney fdr the government knows--or through due diligence could know--that the item exists; and
>> (iii) the item is material to preparing the defense or the government intends to use the item in its case-in-chief at trial.

Rule 16 (F). The Government takes the position that the Report-- the excluded one--was neither favorable nor material for trial or

10 Well, I assume. I don't know for sure. I don't know how he discharged the weapon. All I know is that I'm trained to maintain a straight finger and I've done so hundreds of times before, but the weapon did go off and it could only have went off from somebody depressing that grigger in there. (Gov't Exh 2 at B-16-B17).

The Report should have been turnover to the defense because it was favorable for sentencing purposes--and material thereof. Since the Government released other Reports favorable to them by the U.S. Marshals stating that the firearm discharged could have come from Mr. Lora-Pena's doings, then the State Trooper's Report should have part of this discovery obligation. See (Exh. "D", A279, L.8-20).

Furthermore, had this Court relied on the Report to conclude that "a firearm was accidentally discharged" by the U.S. Marshal, rather than by Mr. Lora-Pena, the Court could not have applied the discharge-of-a-firearm enhancement in USSG § 2A2.2(b)(2)(A). The principle in Gordon, 64 F.3d 281 (7th Cir. 1995), should guide this Court that § 1B1.3(a)(1)(A) could subject Mr. Lora-Pena to an enhancement on the basis of "all acts...willfull...acts because it was not certain that he even intended to cause the firearm to discharge. Gordon, id. Hence, this Court should find that U.S.S.G. Manual § 2B3.1(b)(2)(A) is no more linaguistically different than § 2A2.2(b)(2) and that the principle in Gordon is equally applicable to the present case at bar. In sum, the district Court should applied this enhancement based on the State Trooper's Report that a U.S. Marshal accidentally discharged his own firearm.

## CONCLUSION

For all of the above reasons stated in this Memorandumu of Law, Mr. Lora-Pena's Motion should be granted in its enterity. In the alternative, Mr. Lora requests that this Court grant him an evidentiary hearing on his ineffective assistance claims.

-24-

Respectfully Submitted,

cc.
filed:/3/5/2008

NELSON LORA-PENA
Reg. No._____
USP Canaan

SETH M. BEAUSANG(I.D. No.4071)

Post Office Box 300
Waymart, Pennsylvania 18472

Assistant U.S. Attorney
1007 Orange Street, Suit 700
Wilmington, Delaware 19801

---

## CERTIFICATE OF SERVICE

I, Nelson Lora-Pena, declear under penalty of perjury that a copy of this Respond Motion was placed at the Institutional mail room for delivery to the following party:

Seth M. Beausang
Assistant United States Attorney
1007 Orange Street, Suit 700
Wilmington, Delaware 19801

-24-