IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

```
NELSON LORA-PENA,                    :
                                     :
      Movant/Defendant,              :
                                     :
v.                                   : Cr. A. No. 05-47-JJF
                                     : Civ. A. No. 07-789-JJF
                                     :
UNITED STATES OF AMERICA,            :
                                     :
      Respondent/Plaintiff.          :
```

**MEMORANDUM OPINION**[1]

_____

Nelson Lora-Pena.  Pro se Movant.

Seth M. Beausang, Assistant United States Attorney, United States
Department of Justice, Wilmington, Delaware.  Attorney for
Respondent.

_____

December ___/5___ , 2008
Wilmington, Delaware

_____

[1]This case was originally assigned to the Vacant Judgeship
Docket, and was re-assigned to this Court on January 30, 2008.

Farnan, District Judge

Nelson Lora-Pena ("Movant") filed a Motion To Vacate, Set Aside, Or Correct Sentence Pursuant To 28 U.S.C. § 2255. (D.I. 47; D.I. 51.) Respondent filed an Answer in opposition, and Movant filed a Reply. (D.I. 54; D.I. 57.) For the reasons discussed, the Court will deny Movant's § 2255 Motion without holding an evidentiary hearing.

## I. PROCEDURAL AND FACTUAL BACKGROUND[2]

On April 9, 2005, four officers of the United States Marshals Service Fugitive Task Force ("Officers") arrested Movant in his home for violating the terms of his supervised release imposed in the District of Rhode Island. During his trial, Movant admitted that he violated the terms of his supervised release by leaving Rhode Island approximately ten years earlier, and that he had been on the run until his arrest in 2005. Movant also admitted to using a fake name and fake documents to conceal his identity from law enforcement during that time.

During Movant's trial, the Government presented testimony of the four officers who apprehended and arrested Movant: David Thomas, William David, Jack Leo, and Robert Denney ("Marshal

---

[2]In large part, the factual background reflects the summary of facts provided by the Third Circuit in its decision affirming Movant's conviction and sentence. See United States v. Lora-Pena, 227 Fed. Appx. 162 (3d Cir. 2007). However, the Court has supplemented the factual background with facts gleaned from the trial transcript. (D.I. 42; D.I. 43.)

1

Thomas," "Deputy Marshal David," "Deputy Marshal Leo," and "Deputy Marshal Denney"). According to that testimony, on the day they apprehended Movant, Thomas and Denney proceeded to the back of Movant's residence, while David and Leo proceeded to the front of the residence. David and Leo stood outside when Movant came to the door with two large pit bull dogs, who were barking, growling, snarling, and lunging. Movant pushed the door open and attempted to have the dogs attack the officers while he ran toward the back of the house. David kicked the door shut before the dogs were able to exit.

Movant attempted to escape out the rear of the house, but he abandoned that attempt and re-entered the residence upon seeing Thomas and Denney. All four marshals were eventually able to enter the house, where they observed Movant in the kitchen. He initially indicated a willingness to cooperate but then ran into another part of the house. The marshals chased him through the house, followed by the dogs. One snarling dog lunged at David, while another attempted to grab Denney's pant leg in its mouth. The marshals were able to confine the dogs in a room behind a closed door.

Meanwhile, Leo struggled with Movant and struck him in the nose with his head while Movant was attempting to grab Leo's weapon. The two knocked into a hallway, creating a hole in the wall. They continued struggling as Movant scratched, clawed, and

2

punched Leo, while Leo struck Movant with his elbow, fist, and
forearm.  Movant grabbed Leo's rifle, which caused it to fire a
bullet through the front door of the house.  The bullet struck
the concrete on the ground outside without injuring anyone.  At
this point Thomas came to Leo's aid and managed to help pull
Movant to the ground.  The other marshals came shortly
thereafter.  The efforts of all four Federal marshals and a state
trooper were required to subdue Movant with handcuffs, leg cuffs,
and a waist chain.  United States v. Lora-Pena, 227 Fed. Appx.
162(3d Cir. 2007); (D.I. 42; D.I. 43.)

A federal jury found Movant guilty on three counts of
assault on a federal officer and one count of resisting arrest,
in violation of 18 U.S.C. §§ 111(a)(1)-(b) and 111(a)(1),
respectively.  The Honorable Kent A. Jordan sentenced Movant to
87 months in prison for his convictions on the four counts, and
to 5 months in prison, to be served consecutively, for a
violation of Movant's supervised relese.  Movant appealed, and
the Third Circuit Court of Appeals affirmed his convictions and
sentences.  Id.

Movant timely filed a § 2255 Motion and an amendment to that
Motion (hereinafter referred to as "Motion").  (D.I. 47;  D.I.
51.)  Respondent filed an Answer in Opposition, to which Movant
filed a Reply.  (D.I. 54; D.I. 57.)  The Motion is ready for
review.

3

## II.  EVIDENTIARY HEARING

Section 2255 requires a district court to hold an evidentiary hearing on a § 2255 motion unless the "motion and the files and records of the case conclusively show" that the petitioner is not entitled to relief.  28 U.S.C. § 2255;  see also United States v. Booth, 432 F.3d 542, 545-46 (3d Cir. 2005); United States v. McCoy, 410 F.3d 124, 131 (3d Cir. 2005);  Rule 8(a), 28 U.S.C. foll. § 2255.  After reviewing the record and filings in this case, the Court concludes that the record definitively establishes that Movant is not entitled to relief. Therefore, the Court concludes that an evidentiary hearing is not required.

## III.  DISCUSSION

Movant's § 2255 Motion asserts three claims: (1) defense counsel provided ineffective assistance during sentencing and on appeal by failing to object to the discharge of a firearm enhancement to his sentence under United States Sentencing Guideline ("U.S.S.G.") § 2A2.2(2) because Leo, not Movant, accidentally discharged the firearm; (2) defense counsel provided ineffective assistance during sentencing and on appeal by failing to argue that Movant should have been sentenced under U.S.S.G. § 2A2.3 for a minor assault instead of being sentenced under U.S.S.G. § 2A2.2 for an aggravated assault; and (3) the Government violated Brady v. Maryland, 373 U.S. 83 (1963) by

4

failing to disclose a Delaware State Police "Initial Crime Report" and that the Government also engaged in prosecutorial misconduct by knowingly relying on perjured testimony.[3] (D.I. 47; D.I. 51.)

## A. Ineffective Assistance Of Counsel Claims

Movant has properly raised his ineffective assistance of counsel claims in a § 2255 motion rather than on direct appeal. See United States v. Garth, 188 F.3d 99, 107 n.11 (3d Cir. 1999); United States v. Cocivera, 104 F.3d 566, 570 (3d Cir. 1996); see also United States v. Swint, 2000 WL 987861, at *5 (E.D.Pa. July 17, 2000). To prevail on his ineffective assistance of counsel claims, Movant must satisfy the two-part test articulated by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 687-88 (1984). Under Strickland's first prong, Movant must demonstrate that counsel's performance fell below an objective

_____

[3]In his "Memorandum of Law in Opposition to the Government's Response" Movant also argues that Judge Jordan impermissibly double-counted his enhancements by increasing the base level of 14 two levels under § 2A2.2(b)(6)and then another six levels under § 3A1.2(c)(1)(official victim adjustment). (D.I. 57 at pp.14-5.) The Court denies this argument as meritless. Application Note 2 to § 3A1.2 states that the official victim adjustment should not be applied if the applicable guideline specifically incorporates assaulting an official victim, and notes that § 2A2.4 is the only guideline that specifically incorporates that factor. Therefore, the six-level adjustment under § 3A1.2(c)(1) applies if, as here, the offense guideline used is § 2A2.2. See, e.g., United Stats v. Park, 988 F.2d 107, 110 (11th Cir. 1993). Simply stated, there was no impermissible double-counting of enhancements.

standard of reasonableness, with reasonableness being judged
under professional norms prevailing at the time counsel rendered
assistance.  Id. at 688.  Under the second prong of the
Strickland test, Movant must affirmatively show that counsel's
deficient performance prejudiced his case.  Strickland, 466 U.S.
at 692-93.  In other words, Movant must show that "there is a
reasonable probability that, but for counsel's unprofessional
errors, the result of the proceeding would have been different."
Id. at 694.  And finally, "[a] court can choose to address the
prejudice prong before the ineffectiveness prong and reject an
ineffectiveness claim solely on the ground that the defendant was
not prejudiced."  See Rolan v. Vaughn, 445 F.3d 671, 678 (3d Cir.
2006).

## 1.  Claim One

Section 2A2.2(b)(2)(A) of the Sentencing Guidelines
provides, in relevant part, that the base offense level of 14 for
an aggravated assault is increased by 5 levels if a firearm was
discharged.  In concluding that the facts in Movant's case called
for the 5-level enhancement due to the firearm discharge, Judge
Jordan explained that

[g]iven the verdict of the jury and the evidence which I,
myself heard at least to a preponderance of the evidence, I
conclude that the weapon was discharged as a result of and
as a direct consequence of the struggle which was going on
between the marshal and the defendant. . . . And so that
five level increase is applicable by the terms of the
guideline, itself.

6

(D.I. 44, at pp. 16-17.)

In Claim One, Movant contends that defense counsel should have objected during the sentencing hearing to the application of the 5-level discharge-of-a-firearm sentence enhancement under U.S.S.G. § 2A2.2(2)(b) by arguing that the discharge of the firearm was accidental and had nothing to do with Movant.  The record reveals that trial counsel did object to the enhancement under § 2A2.2(2)(b) on this basis, therefore, the Court will summarily deny this portion of Claim One as meritless.

In addition, Movant contends that counsel should have argued on appeal that there was no factual or legal basis for applying the 5-level discharge-of-a-firearm sentence enhancement under U.S.S.G. § 2A2.2(2)(b).  With respect to Movant's challenge to the factual basis for the enhancement, Movant asserts that Judge Jordan unreasonably concluded that Movant caused Leo's firearm to discharge.  As for Movant's legal challenge to the application of the enhancement, he alleges that the 5-level enhancement was improper because he did not own the firearm, nor was he in possession of the firearm when it discharged;  rather, Leo accidentally discharged the firearm during his struggle with Movant.

In this case, the Court will not address the reasonableness of counsel's performance under Strickland because Movant so clearly fails to satisfy the prejudice prong of the Sixth

7

Amendment analysis. <u>See Strickland</u>, 466 U.S. at 697.
Significantly, if appellate counsel had challenged the five-level
enhancement under § 2A2.2(2)(b), the Third Circuit Court of
Appeals would have reviewed Judge Jordan's factual determinations
underlying the sentencing enhancement for clear error to
determine if the factual finding was completely devoid of a
credible evidentiary basis, but it would have exercised plenary
review over the legal question related to his interpretation and
application of the Guidelines. <u>United States v. Helbling</u>, 209
F.3d 226, 242-43 (3d Cir. 2000); <u>United States v. Jacobs</u>, 431
F.3d 99, 116 (3d Cir. 2005). Consequently, in order for Movant
to establish that he was prejudiced by counsel's failure to raise
these issues on appeal, he must show a reasonable probability
that the Third Circuit would have found Judge Jordan's factual
basis for applying the five-level enhancement completely devoid
of a credible evidentiary basis, and that the Third Circuit would
have found that Judge Jordan improperly applied the enhancement
to those facts.

### (a) Factual challenge to enhancement

During the trial, Movant testified that he knew the
individuals who knocked on his door were police officers, and he
described how he attempted to escape from his home. Movant
testified that Leo initiated the struggle by tackling him in the
hallway when Movant re-entered the home through the back door,

8

and that he did not know Leo was in possession of a rifle or gun during their struggle.  (D.I. 43, B-25 to B-51.)  According to Movant, Leo then beat him on the floor, threw him into the wall, (as shown by the hole in the wall), and then beat him again while he was lying on the floor.  Movant testified that David stood there watching, and actually hit him once as well, and that the other two marshals (Thomas and Denney) tried to get Leo to stop once they entered the hallway.  Movant asserted that he did not hit any marshal.  On cross-examination, Movant stated that only Thomas tried to help him.  (D.I. 43, B-25 to B-51.)

David testified and explained how he and Leo approached the front of Movant's house, while Denney and Thomas went to the rear of the house.  The main front door was open, but the front screen door was closed.  As the marshals approached, they identified themselves as police officers.  Movant was in the front hallway with his two snarling pitbulls.  David testified that he told Movant to control the dogs, and actually drew his gun and aimed it at one of the dogs when he thought the dog was going to attack him.  He described how Movant opened the front door and then turned and fled down the hall and out the back of the house. Movant re-entered the back door of the residence after his attempt to escape failed, only to become engaged in a physical struggle with Denney.  Movant became free and proceeded to run down the hallway with Thomas in pursuit while David and Denney

9

secured the snarling pit bulls in a room. Once the dogs were secured, David heard a gunshot, and he and Denney ran to the hallway and observed Thomas on the floor attempting to gain control of Movant's legs while Leo was on his knees along the right side of Movant. During this time, Movant was thrashing, kicking, attempting to crawl away, and speaking profanity. David helped Leo and Thomas subdue and restrain Movant. (D.I. 42, at A-83 to A-121.)

Denney's testimony corresponded with David's. He reiterated how Movant attempted to fight off the other officers in an attempt not to be handcuffed. (D.I. 42, at A-179.)

Thomas' testimony focused on his involvement in attempting to restrain Movant. Thomas explained that Movant was hitting and flailing, so he grabbed Movant by the knees, which caused Movant and the other marshal to fall down. (D.I. A-197 to A-200.)

Leo testified that he had been with the Marshal Service for a total of ten years. He testified that after Movant re-entered the house following his failed escape out the back, Movant ran down the hall toward Leo. At this point, Leo was holding his rifle in a sling across his body. Leo further testified that

[Movant] broke free from the two gentlemen [Officers] that were trying to restrain him and charged right into me. . . . My concerns were to protect the weapon, to protect myself, and to keep him from getting by me. So I had to maintain control of the weapon with my right hand and I grabbed him with my left hand in an effort to keep him from getting away. In doing that, and because I was standing still while he was charging at me or into me, we started - - his

10

> momentum focused both of us backwards into the wall. . . . He was trying to escape. He was scratching. He was clawing. He was punching. He was digging his nails into my hands, into my scalp. He was grabbing the weapon. And he was, he was basically trying to get it away from me. . . . As part of the struggle, periodically he would grab that weapon and try to pull it away from me, grab my hand holding that weapon, dig his nails into my hand that was holding that weapon. Basically, he was trying to get it. . . . Although at that point, it really got stepped up because while he was clawing at my hands and trying to get the rifle, he caused it to discharge or fire a round through this [front] door here and out into the neighborhood.

(D.I. 42, at A-212 to A-225.) On cross-examination, Leo

tesitifed

> As he [Movant] was pulling at it [the gun] and pulling at my hands, his finger slipped into the trigger. Well, I assume. I don't know for sure. I don't know how he discharged the weapon. All I know is that I'm trained to maintain a straight trigger finger and I've done so hundreds of times before, but the weapon did go off and it could only have went off from somebody depressing that trigger in there.

(D.I. 43, at B-16, B017.) The other three marshals were not involved in the struggle when the firearm discharged, nor did they witness the struggle when the firearm actually discharged.

The Court acknowledges the conflict between Movant's account on how the firearm was discharged and Leo's account on how the discharge occurred. Nevertheless, it is not the Court's role on habeas review to judge the credibility of witnesses or resolve conflicts in testimony;[4] rather, the finder of fact determines the credibility of the witnesses in resolving a direct conflict in

---

[4]Jackson v. Virginia, 443 U.S. 307, 326 (1979).

11

testimony. Tillery v. Cavell, 294 F.2d 12, 22 (3d Cir. 1961). In turn, such credibility determinations are accorded deference absent exceptional circumstances. Hernandez v. New York, 500 U.S. 352, 369 (1991).

In this case, Judge Jordan's conclusion that the weapon was discharged as a direct consequence of the struggle between Movant and Leo was based upon the jury verdict and the evidence Judge Jordan heard during the trial and the sentencing hearing. Judge Jordan properly relied on the trial testimony in considering how to sentence Movant. See United States v. Roman, 121 F.3d 136 (3d Cir. 1997). To the extent Judge Jordan's factual conclusion was based upon the jury's implicit finding that the marshals' testimony was more credible than Movant's testimony, Movant has not asserted any exceptional circumstances to justify the Court's departure from the presumption of deference owed to that finding. Additionally, viewing Leo's testimony in context with the entire record, the Court concludes that the testimony provided a credible evidentiary basis for Judge Jordan's factual determination that Leo's gun was discharged as a direct result of his struggle with Movant. Therefore, the Court will deny this portion of Claim One because Movant has failed to demonstrate that he was prejudiced by counsel's failure to challenge the factual basis of the enhancement on direct appeal.

12

### (b) Challenge to legal basis for enhancement

The Court next considers Movant's argument that Judge Jordan erred in applying the five-level enhancement in his case because the firearm was accidentally discharged while it was in Leo's possession. Movant argues that § 2A2.2(b)(2)(A) only applies where the firearm was discharged by the defendant, a co-conspirator, or an accomplice.

The Third Circuit has not yet squarely addressed the issue as to whether a defendant's sentence can be enhanced under U.S.S.G. § 2A2.2(b)(2)(A) for a firearm discharge if someone other than the defendant accidentally discharges the firearm while engaged in a physical struggle with the defendant. However, the plain language of U.S.S.G. § 2A2.2(b)(2)(A) makes no distinction between accidental and purposeful firearm discharges, nor does the section require the defendant to have possession of the firearm that discharged. Rather, the only requirement under § 2A2.2(b)(2)(A) is that "a firearm was discharged." In this case, there is no doubt that a firearm was discharged. Therefore, the Court concludes that a reading of the plain language contained in § 2A2.2(b)(2)(A) supports Judge Jordan's application of the enhancement to Movant's case.

Moreover, pursuant to U.S.S.G § 1B1.3(a)(1)(A), when determining a defendant's sentencing guideline range, a court must consider the following relevant conduct: "all acts

13

. . . committed . . . induced, procured, or willfully caused by the defendant." The majority of Circuit Courts addressing the issue of accidental firearm discharges have focused on the interplay of the plain language of § 1B1.3(a)(1)(a) with the plain language of the particular offense guideline in Chapter Two at issue in the cases before them (typically § 2B3.1), and have held that applying a firearm enhancement is appropriate for accidental discharges if the defendant induced the struggle in which the firearm was discharged or if the defendant could reasonably foresee that the gun might be discharged as a result of such activity. See United States v. Roberts, 203 F.3d 867, 870 (5th Cir. 2000)(applying § 2B3.1); United States v. Henderson, 48 Fed. Appx. 455, 456 (4th Cir. 2002)(non-precedential)(applying § 2B3.1); United States v. Williams, 51 F.3d 1004, 1011 (11th Cir. 1995)(applying § 2B3.1).

Here, the record reveals that Movant knew that Leo was a law enforcement officer and that Leo's rifle was displayed in clear view just prior to, as well as during, their struggle. In addition, the record demonstrates that Movant engaged in aggressive fighting behavior with Leo, as demonstrated by Movant's "scratching, clawing, and hitting" the marshal, and that Movant continually physically resisted Leo's verbal and physical attempts to subdue him. And finally, both Movant and Leo testified that the firearm discharged while the struggle was

14

going on, although Movant stated that he thought the discharge was from a gun in the possession of one of the other marshals not engaged in the struggle.

During the sentencing hearing, Judge Jordan stated that the jury verdict, along with the evidence he himself heard during the trial, led him to conclude that the firearm was discharged as a "direct consequence" of the struggle between Leo and Movant. This statement demonstrates that Judge Jordan considered Movant's relevant conduct in deciding to enhance Movant's sentence under § 2A2.2(b)(2)(A). (D.I. 44, at pp. 16-17.) Moreover, viewing Movant's relevant conduct within the analytical framework provided by Roberts, Henderson, and Williams demonstrates that the 5-level enhancement was properly applied; Movant clearly induced the struggle that led to the firearm discharge or, at a minimum, he could have reasonably foreseen that the firearm slung across Leo's torso would discharge as a result of the physical struggle he initiated with the officer. Therefore, the Court concludes that Movant cannot demonstrate a reasonable probability that the Third Circuit would have found that Judge Jordan erroneously applied the 5-level enhancement in his case.

Nevertheless, Movant relies on the Seventh Circuit's holding in United States v. Gordon, 64 F.3d 281 (7th Cir. 1995) to support his argument that Judge Jordan erred in applying the 5-level enhancement. In Gordon, the defendant, Kevin Gordon ("Gordon"),

robbed a bank with a metal pipe that he used to give the
impression that he had a gun. Id. at 282. During the course of
the robbery, a security guard came up behind Gordon, placed a gun
to his back, and told Gordon not to struggle or he would be shot.
Id. Gordon chose to struggle with the guard, and therefore, the
guard shot him. Id. The Seventh Circuit held that a seven-level
increase under U.S.S.G. § 2B3.1(b)(2)(A) does not apply where a
non-participant in the crime (e.g., a security guard) discharges
a firearm. Id. at 284.

The Court rejects Movant's argument that Gordon lends
credence to his argument regarding the alleged impropriety of the
5-level enhancement because Gordon is distinguishable on the
facts from the circumstances in this case. First, unlike the
situation in Gordon, the evidence in Movant's case does not
clearly show that the firearm was discharged by a non-participant
in the crime. Second, and perhaps most significant, Officer Leo
did not purposefully discharge his firearm in order to prevent
Movant from fleeing, but rather, the firearm was discharged
during a struggle that was intentionally initiated by Movant.
Accordingly, the Court will deny this portion of Claim One
relating to the legal basis for the enhancement because Movant
has failed to demonstrate the requisite prejudice under
Strickland.

16

## 2. Claim Two

Count I of the Indictment charged Movant with forcibly assaulting Leo while Leo was engaged in the performance of official duties, thereby inflicting bodily injury to him in violation of 18 U.S.C. § 111(a)(1) and (b).  Counts II and III of the Indictment charged Movant with using a dangerous weapon, namely, a pit bull terrier, to forcibly assault, resist, interfere with or impede Deputy United States Marshal Robert Denney and Deputy United States Marshal William David while they were engaged in the performance of official duties, in violation of Title 18, United States Code, Section 111(a)(1) and (b).  (D.I. 11.)  The jury found Petitioner guilty on all three counts.

The Pre-Sentence Investigation Report ("PSR") applied § 2A2.2 (aggravated assault) in order to determine Movant's sentences for his convictions under Counts I, II, and III, assigning a base offense level of 14 for each Count.  (D.I. 55.) In describing the "Offense Conduct," the PSR asserted that Movant "attempted to release the dogs on the Deputies;" that two Deputies were attacked by the pit bulls; that Movant forcibly resisted being taken into custody; that Movant fought and grabbed at one of the Marshal's AR-15 rifle, causing it to discharge; and that Movant inflicted "minor lacerations" to a Marshal's hand. Id. at pp.3-4.  Movant did not object to the application of § 2A2.2 during the sentencing hearing, nor did he object to the

17

two-level enhancement under § 2A2.2(b)(6) for being convicted
under § 111(b). Consequently, Judge Jordan accepted the Total
Offense Level of 29 for all four Counts recommended by the PSR.[5]

Now, in Claim Two, Movant contends that counsel should have
challenged the Court's decision to sentence him for an aggravated
assault under § 2A2.2 (base offense level of 14) rather than for
a minor assault under § 2A2.3 (base offense level of 7) for
Counts I, II, and III, because the evidence at trial demonstrated
that the assault was "minor" in nature. Although Movant concedes
that § 2A2.2 is the guideline section "ordinarily applicable" to
the statute of conviction here (18 U.S.C. § 111), he quotes the
following language from "U.S.S.G., app. A" to support his
argument that § 2A2.3 should have been applied in his case:

> If, in an atypical case, the guideline section indicated for
> the statute of conviction is inappropriate because of the
> particular conduct involved, use the guideline section most

---

[5]The Adjusted Offense Level for Count I was 27, computed as
follows:
Base Offense Level under § 2A2.2: 14
Specific Offense Characteristic: 5 level enhancement under §
2A2.2(b)(2)(A)
Specific Offense Characteristic: 2 level enhancement under §
2A2.2(b)(6)
Victim Related Adjustments: 6 level enhancement under §
3A1.2(c)(1)
The Adjusted Offense Levels for Counts II and III were each
22, computed as follows:
Base Offense Level under § 2A2.2: 14
Specific Offense Characteristic: 2 level enhancement under §
2A2.2(b)(6)
Victim-Related Adjustments: 6 level enhancement under §
3A1.2(c)(1)

> applicable to the nature of the offense conduct charged in
> the count for which the defendant was convicted.

(D.I. 57, at p. 17.)  More specifically, Movant argues that the

Court erred in applying the "aggravated assault" enhancement

under § 2A2.2 because the injuries sustained were minor in

nature, and also because he did not order the pit bulls to attack

the Officers.  Movant asserts that counsel should have raised

this issue during the sentencing hearing and also on direct

appeal.

To begin, the Court notes that the "atypical case" language

quoted by Movant appears to be from the introductory commentary

to Appendix A of the United States Sentencing Guidelines.  This

language was eliminated from the commentary to Appendix A by

Amendment 591 as of November 1, 2000,[6] and the 2005 version of the

introductory commentary to Appendix A applied in Movant's case

specifies the particular offense guideline contained in Chapter

Two that applies to the statute of conviction without any mention

of an "atypical case."  In turn, the 2005 version of Appendix A

explicitly lists § 2A2.2 and § 2A2.4 as the two offense sections

applicable to violations of 18 U.S.C. § 111, the statute of

conviction in this case.  See also U.S.S.G. § 1B1.2 ("Refer to

the Statutory Index (Appendix A) to determine the Chapter Two

offense guideline").  Therefore, despite Movant's argument to the

_____

[6]See United States v. Mustafa, 238 F.3d 485, 496 (3d Cir.
2001)

19

contrary, § 2A2.3 could not have been applied in his case. <u>See</u>
<u>United States v. Williams</u>, 260 Fed. Appx. 444, 446-7 (3d Cir.
Jan. 9, 2008)(non-precedential). Accordingly, the Court will
deny Claim Two because counsel did not provide ineffective
assistance by failing to raise Movant's meritless argument that §
2A2.3 should have been used to determine his base offense level.
<u>See</u> <u>United States v. Sanders</u>, 165 F.3d 248, 253 (3d Cir.
1999)("an attorney does not provided ineffective assistance by
failing to raise meritless arguments or objections").

## B. Claim Three: <u>Brady</u> violation and Use of Perjured Testimony

In Claim Three, Movant alleges that the Government violated
the <u>Brady</u> discovery rule by failing to disclose a Delaware State
Trooper Report. Movant also contends that the Government
knowingly relied on Leo's perjured testimony "that [Movant] had
grabbed the Marshal's gun and discharged it." (D.I. 51 at p. 4.)

Movant did not raise the two arguments presented in Claim
Three on direct appeal. Therefore, Claim Three is procedurally
defaulted and cannot be reviewed pursuant to 28 U.S.C. § 2255
unless Movant demonstrates cause for the default and actual
prejudice resulting therefrom. <u>Bousley v. United States</u>, 523
U.S. 614, 616, 621-23 (1998)(citation omitted); <u>United States v.</u>
<u>Essig</u>, 10 F.3d 968, 979 (3d Cir. 1993)(citing <u>United States v.</u>
<u>Frady</u>, 456 U.S. 152, 167-68 (1982)). However, because the cause
and prejudice inquiry parallels the merits of the alleged <u>Brady</u>

20

violation itself, the Court will forego the typical cause and prejudice analysis, and review the merits of Claim Three to determine if Movant has demonstrated a "reasonable probability that the result of the trial [or sentencing] would have been different" but for the alleged errors. See Strickler v. Greene, 527 U.S. 263, 289 (1999).

In Brady v. Maryland, 373 U.S. 83(1963), the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 87. There are three components to a Brady violation: (1) the material evidence "must be favorable to the accused, either because it is exculpatory, or because it is impeaching;" (2) the [Government] willfully or inadvertently suppressed the evidence; and (3) prejudice ensued. Strickler v. Greene, 527 U.S. 263, 281-82 (1999). The materiality standard for a Brady claim is satisfied when "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict," or, stated another way, there is a reasonable probability of a different result. Kyles v. Whitley, 514 U.S. 419, 434 (1995). The prosecutor's duty to disclose material exculpatory evidence

21

applies even if the accused does not request the evidence. Id.
at 280.

Movant contends that the Government should have disclosed a
Report from a Delaware State Trooper which asserted that "a
firearm was accidentally discharged by a U.S. Marshal during a
lengthy struggle with [Movant]." Movant argues that the Report
constituted material and favorable evidence because it clearly
demonstrates that Officer Leo accidentally discharged his own
gun. Therefore, in Movant's opinion, he was prejudiced by the
Report's suppression.

In contrast, the Government argues that the Report is
neither favorable nor material because it substantially
corroborates Officer Leo's testimony that he was uncertain as to
how the firearm was discharged. For instance, on cross-
examination, Leo testified that

> [a]s he [Movant] was pulling at it [the gun] and pulling at
> my hands, his finger slipped into the trigger. **Well, I**
> **assume. I don't know for sure. I don't know how he**
> **discharged the weapon.** All I know is that I'm trained to
> maintain a straight trigger finger and I've done so hundreds
> of times before, but the weapon did go off and it could only
> have went off from somebody depressing that trigger in
> there.

(D.I. 43, at B-16, B017.)(emphasis added).

After reviewing the record, the Court concludes that, even
if the Government had a duty to produce the Report, there is no
Brady violation because the non-disclosure did not prejudice
Movant. United States v. Starusko, 729 F.2d 256, 262 (3d Cir.

22

1984). As an initial matter, Movant cannot demonstrate a reasonable probability that his sentence would have been different but for the Government's failure to disclose the Report, because the Report merely underscores Leo's own expression of uncertainty regarding the manner in which the weapon was discharged. Moreover, even if the Report had been produced, it would not have precluded the application of the enhancement under § 2A2.2(b)(2)(a). As Judge Jordan explained, he found the enhancement appropriate because the firearm discharged as a result of Movant's willful decision to assault a federal officer who was holding a rifle; the identity of the person whose finger accidentally squeezed the trigger during the struggle was irrelevant to the applicability of the enhancement. Accordingly, the enhancement would have been applied even if the Report had been submitted into evidence.

Movant also argues that the Government committed prosecutorial misconduct by knowingly relying on Leo's perjured testimony at trial. Presumably, Movant believes that the Report demonstrates that Leo was lying when he testified that he assumed Movant accidentally caused the gun to discharge.

Based on the record, the Court concludes that this claim is without merit. First, the Report does not demonstrate, or even suggest, that Leo lied. Second, even if Leo lied on the stand when he stated that Movant's "finger slipped into the trigger,"

considering that Leo immediately supplemented that statement by saying "[w]ell, I assume . . . I don't know for sure . . . I don't know how he discharged the weapon," Movant has not demonstrated that the Government knew that Leo was lying. Accordingly, the Court will deny Movant's claim that the Government knowingly used perjured testimony.

## IV. PENDING MOTIONS

### A. Motion For Sentence Adjustment

Movant filed a Motion For Sentence Adjustment during the pendency of this case. (D.I. 60.) Movant asserts that his status as a deportable alien renders him ineligible for placement in a half-way house or in a minimum security facility, and if he participated in a residential drug abuse program, he would not receive a reduction in time served. Citing Restepo v. United States, 802 F. Supp. 781 (E.D.N.Y. 1992) to support his argument, Movant contends that he is entitled to a six month sentence reduction because his status as a deportable alien will result in him serving a sentence under more severe circumstances than a sentence served by a United States citizen for the same crime. Id.

As an initial matter, the Court notes that there is no independent statutory basis to grant a downward departure following the imposition of sentence. See, e.g. 18 U.S.C. § 3582(c)(a sentence may not be modified after it has been imposed

24

unless it fits within the express and limited exceptions).   To
the extent the Motion can be construed as a Motion to Correct
Sentence pursuant to Federal Rule of Criminal Procedure 35, this
construction also fails to provide the relief Movant seeks.   For
instance, although Rule 35(a) permits a court to correct a
sentence within seven days after sentencing, Movant filed the
instant Motion approximately one and one-half years after the
imposition of his sentence.   In turn, Rule 35(b) does not apply
because the Motion was not filed by the Government, it was not
filed within one year of Movant's sentencing, and the basis for
relief is not Movant's substantial assistance.   And finally, to
the extent the Motion constitutes a Motion to Amend the instant §
2255 Motion, the Court denies the amendment as futile because the
issue raised by Movant does not rise to a constitutional
violation or a miscarriage of justice.[7]   See United States v.
Mitchell, 2001 WL 708808, at *2 (D. Del. June 20, 2001).

Nevertheless, even if Movant's request for a sentence
reduction ("New Claim") asserts a cognizable issue under § 2255,
and the Court permitted its addition to the instant § 2255

_____

[7]The Government interprets the claim raised in the Motion as
alleging ineffective assistance of counsel for failing to raise
at sentencing or on direct appeal the issue of Movant's
ineligibility for certain programs due to his deportability
status.   The Court does not interpret the claim as alleging
ineffective assistance of counsel; rather, it views the claim as
alleging the aforementioned substantive argument for sentence
reduction.

Motion, the New Claim is procedurally defaulted; defense counsel asked Judge Jordan at sentencing to consider Movant's deportability status in determining the appropriate sentence, but counsel did not raise the issue of Movant's deportability status and its effect on his sentence on direct appeal. Therefore, the Court cannot review the merits of the New Claim absent a showing of cause and prejudice, or that a miscarriage of justice will occur absent such review.

To demonstrate cause, Movant must demonstrate that "some objective factor external to the defense" prevented him from raising the instant argument on direct appeal. See Murray v. Carrier, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, Movant must show that the alleged error worked to his actual and substantial disadvantage. United States v. Frady, 456 U.S. 152, 170 (1982). Alternatively, the Court could excuse the default in order to prevent a miscarriage of justice if Movant demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray, 477 U.S. at 496; Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Wenger v. Frank, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. Bousley v. United States, 523 U.S. 614, 623 (1998); Murray, 477 U.S. at 496. Movant can only establish

26

actual innocence by asserting "new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - - that was not presented at trial," showing that no reasonable juror would have voted to find him guilty beyond a reasonable doubt.  Hubbard v. Pinchak, 378 F.3d 333, 339-40 (3d Cir. 2004).

Movant does not assert any cause for the failure to raise the issue as to whether he should have received a lower sentence due to harsh collateral consequences effectuated by his deportability status.  In the absence of cause, the Court does not need to address the issue of prejudice.  Nevertheless, the Court concludes that Movant cannot demonstrate any prejudice resulting from the failure to raise this issue on appeal.  The Restrepo case cited by Movant to support his request for a sentence reduction has no precedential effect in this proceeding because it was issued by the United States District Court for Eastern District of New York.  In addition, Restrepo was reversed on appeal by the Second Circuit Court of Appeals in 1993 after that court held that a deportable alien's ineligibility for serving the last part of his sentence in a half-way house did not constitute an appropriate basis for granting a downward departure.  See United States v. Restrepo, 999 F.2d 640 (2d Cir. 1993).

Moreover, although the Third Circuit has not squarely addressed the argument presented here, the Court notes that other circuits recognizing the possibility of granting a downward departure based on the defendant's deportable status have held that such downward departures would only be appropriate in extraordinary circumstances. See United States v. Farouil, 124 F.3d 838, 847 (7th Cir.1997)(noting that district court had discretion to depart downward based on defendant's deportability where it presented an "unusual or exceptional hardship"); United States v. Smith, 27 F.3d 649, 655 (D.C.Cir.1994)("[I]f a deportable alien is assigned to a more drastic prison than otherwise solely because his escape would have the extra consequence of defeating his deportation, then the defendant's status as a deportable alien would have clearly generated increased severity and thus might be the proper subject of a departure."). There is nothing extraordinary about Movant's case that would make his ineligibility for placement in a halfway house or other programs any more unusual or exceptional than any other defendant with the same deportability status. Therefore, Movant cannot show that the failure to raise this argument on appeal prejudiced him.

And finally, Movant does not present new reliable evidence that was not presented at trial establishing his actual innocence. Thus, the miscarriage of justice exception to the

28

procedural default doctrine does not apply.  Accordingly, even if
Movant's argument could provide a basis for relief under § 2255,
the Court would deny the claim as procedurally barred.

## B.  Motion For Expedited Disposition/Decision

Movant has also filed a Motion For Expedited
Disposition/Decision.  (D.I. 62.)  However, given the Court's
decision to deny Movant's § 2255 Motion, the Court will deny the
Motion For Expedited Disposition/Decision as moot.

## V.  CERTIFICATE OF APPEALABILITY

Finally, the Court must decide whether to issue a
certificate of appealability.  See Third Circuit Local Appellate
Rule 22.2.  A certificate of appealability is appropriate when a
petitioner makes a "substantial showing of the denial of a
constitutional right" by demonstrating "that reasonable jurists
would find the district court's assessment of the constitutional
claims debatable or wrong."  28 U.S.C. § 2253(c)(2);  Slack v.
McDaniel, 529 U.S. 473, 484 (2000).

The Court has concluded that the instant § 2255 Motion does
not warrant relief under 28 U.S.C. § 2255.  In the Court's view,
reasonable jurists would not find this conclusion to be
debatable.  Accordingly, the Court declines to issue a
certificate of appealability.

29

## VI. CONCLUSION

For the reasons stated, the Court will deny Movant's 28 U.S.C. § 2255 Motion To Vacate, Set Aside, Or Correct Sentence without an evidentiary hearing, and will not issue a certificate of appealability.  An appropriate Order will be entered.